UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

            Case No.  15-20552

   vs.

            HON.  GEORGE CARAM STEEH

ANTHONY MOORE,

        Defendant.

_____/

ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT [DOC. 14]
AND DENYING MOTION TO DISMISS COUNT TWO OF THE INDICTMENT [DOC. 15]

Defendant was charged by Indictment on September 3, 2015 with Interference with Commerce by Robbery (18 U.S.C. § 1951(a)) and Possession of a Firearm in connection with a felony offense (18 U.S.C. § 924(c)).  The basis of the charges against defendant is a robbery that occurred at a Marathon gas station on January 11, 2005, during which one of the two robbers involved is alleged to have possessed a gun. Presently before the court are defendant's motion to dismiss the indictment and motion to dismiss count two of the indictment.  The court heard oral argument on the motions on January 6, 2016, taking the matter under advisement and inviting counsel for both sides to file supplemental pleadings.  The matter is now fully briefed and the court is prepared to rule on defendant's motions.

I. Defendant's Motion to Dismiss Indictment

The Clinton Township Police Department initiated an investigation of the robbery. On the date of the robbery three categories of evidence were collected: witness

statements, a security videotape from the gas station, and a nylon stocking found in the road during a K9 track.  Witness interviews were taken of Michelle Holmes and Freda McAdory, employees at the gas station, as well as Andrea Fleischman, a customer at the gas station at the time of the robbery.  The police reports reflect that one of the eyewitnesses to the robbery does "not want to testify or be contacted further about this case."

A VHS tape was retrieved by an evidence technician on the day of the robbery. The tape was received into the property room by the Clinton Township Police Department on January 12, 2005.  The tape was viewed by law enforcement for the first time in April 2015 when it was submitted to the Michigan State Police for still images and for the video to be put into an easily readable format.  The tape was reported to be in "poor condition, having visible 'crinkling' and damage."  The report notes, "that the playback quality of the submitted VHS tape was poor around the time of the incident . . . likely caused by excessive pausing, rewinding, and fast forwarding of the video prior to it being submitted to BID/AVAU for assistance."

During the investigation on the day of the robbery, a K-9 officer and his dog followed the track taken by the suspects as they fled the gas station, and found a nylon stocking along the track.  The nylon was turned over to the Clinton Township Police Department, where it was stored in a temporary locker on January 11, 2005.  It was received into the property room on January 12, 2005, and then signed out for review and returned to property the following day.  It remained in property until October 14, 2014 when it was sent to the Michigan State Police Lab to be examined for DNA.  A November 10, 2014 lab report states that evaluation of the nylon indicated the presence

of a hair that was not human, as well as two human hairs unsuitable for DNA testing. A subsequent report from March 6, 2015 concludes that "[t]he partial DNA profile from [the knee high nylon swabs] is consistent with a mixture of three or more individuals, including one major male contributor." The DNA from the major donor was identified through CODIS on April 13, 2015 as defendant. On February 17, 2016, the FBI re-submitted the knee high nylon swabs for comparison to a recent buccal sample from defendant and determined that defendant's DNA still matches the DNA of the major donor.

The statue of limitations on offenses charged under 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c) is five years. 18 U.S.C. § 3282. In this case over ten years has elapsed between the date the alleged offenses were complete and the date defendant was charged. However, 18 U.S.C. § 3297 contains an exception to the general limitations period based on the distinctive reliability of DNA testing:

> In a case in which DNA testing implicates an identified person in the commission of a felony, no statute of limitations that would otherwise preclude prosecution of the offense shall preclude such prosecution until a period of time following the implication of the person by DNA testing has elapsed that is equal to the otherwise applicable limitation period.

Since defendant was indicted five months after the return of DNA results, the government argues he falls within the five-year statute of limitations. DNA evidence is unique in that it retains its reliability for decades. At this early stage of the prosecution of this case, there is nothing to suggest that the delay in testing the nylon stocking in any way impacted the quality of the sample tested. Defendant of course will have the opportunity to try to prove otherwise as the case proceeds.

-3-

Alternatively, defendant seeks to have the indictment dismissed due to the government's unjustified delay in prosecuting him.  The Fifth Amendment requires dismissal of an indictment where the pre-indictment delay (1) caused substantial actual prejudice to the defendant's right to a fair trial and (2) was an intentional device to gain a tactical advantage over the accused.  *United States v. Marion*, 404 U.S. 307, 324 (1971) (noting that the best analysis will "necessarily involve a delicate judgment based on the circumstances of each case.").  As the Sixth Circuit recognized, "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative."  *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997) (citation omitted).

Defendant argues that the government's excessive delay in prosecuting this case has led to a loss of the surveillance video obtained from the scene of the robbery. Defendant contends that the loss of potentially neutral, objective evidence will hamper his ability to challenge the accuracy of eyewitness descriptions and other evidence about the crime.  The opinion of the Michigan State Police report was that the quality of the tape was poor at the time of the incident.  Defendant points out that this opinion is not supported by any evidence dating to the time of the robbery.  However, defendant does not provide any evidence to support a finding that the tape was of a quality that would have helped his defense if it had been converted to DVD or still images closer to the date of the robbery.  In addition, it is not known if the contents of the tape, even if they were available in a viewable format, would have been helpful to defendant in any event.  It is defendant's burden of showing actual prejudice, and "bare assertions, without supporting evidence, are not sufficient to demonstrate prejudice."  *United States*

-4-

*v. Banks*, 27 Fed.Appx. 354, 357 (6th Cir. 2001).   This argument fails to support a finding of prejudice.

Defendant next points to the police reports that reflect that one of the eyewitnesses to the robbery does "not want to testify or be contacted further about this case."  The police reports were made near the time of the robbery and indicate that the eyewitness statement about wanting to have no further involvement in the matter was made at the time of the incident.  Therefore, the passage of time in indicting defendant is unrelated to that eyewitness's unavailability.

Defendant's final claim is that the pre-indictment delay has undoubtedly lead to a loss of memory of all of the witnesses.  Standing alone, "loss of memory is an insufficient reason to establish prejudice."  *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 1984).  "The possibility that 'memories will dim . . . [is] not in [itself] enough to demonstrate that [defendant] cannot receive a fair trial and to therefore justify the dismissal of the indictment,'" *United States v. Vaughn*, 444 Fed. Appx. 875, 879 (6th Cir. 2011) (citations omitted).  General allegations of loss of memory due to the passage of time do not support a finding of actual prejudice.

Dismissing an indictment for a Fifth Amendment Due Process violation requires a defendant to show prejudice *and* intentional delay.  Defendant's failure to demonstrate actual prejudice makes it unnecessary to decide whether he established that the delay was an intentional device by the government to gain a tactical advantage.  *United States v. Greene*, 737 F.2d 572, 575 (6th Cir. 1984).  The court finds that the pre-indictment delay in this case, though admittedly quite long, does not violate due process.

-5-

## II.  Defendant's Motion to Dismiss Count Two of Indictment

Count Two charges defendant with use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  The crime alleged in this case is Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a).  Defendant contends that after the Supreme Court's decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015), Hobbs Act robbery categorically fails to qualify as a "crime of violence."  Therefore, according to defendant, there can be no violation of § 924(c).

The Hobbs Act robbery statute, 18 U.S.C. § 1951, provides:

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or *fear of injury, immediate or future, to his person or property*, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining shall [be punished in accordance with the remainder of the statute] (emphasis added).

The Armed Career Criminal Act, 18 U.S.C. § 924(c)(1)(A), provides:

. . . any person who, during and in relation to a crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .

(I) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

-6-

The relevant portion of section 924(c) defining a "crime of violence" has two clauses.  The first clause, 924(c)(3)(A), is commonly referred to as the "force" clause. The second, 924(c)(3)(B), is commonly referred to as the "residual" clause:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and –
>
>> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>>
>> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Defendant argues that as it is defined in the statute, a Hobbs Act robbery fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause since pursuant to §1951 the offense can be committed by putting one in fear of future injury to his person or property.  Placing a person in fear of future injury to his person or property does not require the threat of violent physical force against persons or property, and does not require an intentional threat of the same.

Defendant urges this court to use a categorical approach to determine whether a predicate offense qualifies as a "crime of violence" under § 924(c).  This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence."  *Descamps v. United States*, __ U.S. __, 133 S.Ct. 2276, 2283 (2013).  Under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute – "including the most innocent conduct" matches or is narrower

-7-

than the "crime of violence" definition.  *United States v. Amos*, 501 F.3d 524, 527 (6th Cir. 2007) (using "least objectionable conduct" analysis).

Under the categorical approach, for Hobbs Act robbery to qualify as a "crime of violence" under § 924(c)(3)'s force clause, the offense must have an element of "physical force."  "Physical force" means "*violent* force" which is "capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).  Hobbs Act robbery does not meet this requirement because it can be accomplished by putting someone in fear of future injury to his person or property, which does not require the use, attempted use, or threatened use of "violent force." Additionally, because the act of putting someone in fear of injury can be accomplished without an *intentional* threat of physical force, it fails to satisfy the *intentional* mens rea required under the § 924(c)(3)(A) force clause.

The Fourth Circuit held that the threat of *any physical injury*, even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force."  *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). *Torres-Miguel* was a sentencing enhancement case where the defendant was previously convicted of the underlying crime and there were no facts in the record regarding whether the prior state conviction rested on a statute that constituted a violent felony.  The court held that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence."  *Id.* at 168.  The issue before the Fourth Circuit was whether the defendant's prior conviction under a California statute warranted a sentencing enhancement because the crime for which defendant had previously been

-8-

convicted had an element of "violent force" pursuant to the Sentencing Guideline.  The statute under which the defendant had been previously convicted required proof that the defendant wilfully threatened to commit a crime that "will result in death or great bodily injury to another."  The Fourth Circuit applied the categorical approach and held that the California offense was missing a "violent force" element and therefore did not qualify as a "crime of violence" for sentencing purposes because the threat of any bodily injury, "even serious bodily injury or death," does not necessarily require the use of physical force, let alone "violent force."  As an example, the court noted that poisoning another does not involve the use or threatened use of force.

The Supreme Court rejected the rationale of *Torres-Miguel* in *United States v. Castleman*, 134 S. Ct. 1405 (2014).  The Supreme Court held that with poisoning, the use of force is not the act of sprinkling poison, but the act of employing poison knowingly as a device to cause physical harm.  The court therefore found that poisoning was the use of violent force.

The Sixth Circuit, in *United States v. Anderson*, 695 F.3d 390, 399–400 (6th Cir. 2012), considered whether a prior conviction under Ohio's aggravated assault statute constituted a "violent felony" for purposes of triggering the ACCA's three-strikes provision.  The court held that an Ohio conviction for aggravated assault was a "violent felony" because the Ohio statute at issue could be violated with proof that the defendant knowingly caused serious physical harm to another.  The Ohio statute required not just "intent" to cause physical harm, but knowingly causing or attempting to cause physical harm, and critically, the Ohio statute could not be violated solely by intimidation or emotional force.

-9-

The cases cited by defendant arose in the context of sentencing where a district court was deciding whether a past offense, the facts of which were not adjudicated before that court, conformed to a particular statutory definition.  The United States Supreme Court has explained that the categorical approach addresses three concerns that are unique to the ACCA.

> First, it comports with the ACCA's text and history.  Second, it avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries.  And third, it averts "the practical difficulties and potential unfairness of a factual approach."

*Descamps*, 133 S.Ct. at 2287 (quoting *Taylor v. United States*, 495 U.S. 575, 601 (1990)).  None of these concerns are implicated in the present case where the jury will be asked to determine whether defendant Moore is guilty of the Hobbs Act robbery and § 924(c) charges he is facing.

The categorical approach does not apply to a pretrial motion to dismiss an indictment, because the phrase "crime of violence" is an element of § 924(c), not a sentencing factor, and therefore "must be submitted to a jury and found beyond a reasonable doubt."  *See Alleyne v. United States*, 133 S.Ct. 2151, 2258 (2013).  The jury should be instructed that Moore's commission of the Hobbs Act robbery qualifies as a crime of violence only if the jury finds that the government has proven beyond a reasonable doubt that the commission of the offense "ha[d] as an element the use, attempted use, or threatened use of physical force against the person or property of another."  § 924(c)(3)(A).

Defendant next argues that § 924(c)(3)(B) is unconstitutionally vague after *Johnson v. United States*, 135 S.Ct. 2551 (2015).  The Supreme Court in that case held

-10-

that the ACCA's residual clause (not the same clause at issue in this matter) is vague and violates due process.  The clause at issue in *Johnson* defines a "violent felony" to include an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  The Court concluded that increasing a defendant's sentence under "the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges."  *Id.* at 2557.  First, the residual clause ties a judge's assessment of risk to an imagined "ordinary case" of a particular crime rather than actual facts or statutory elements.  *Id.*  Second, the clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony.  The ACCA's structure "forces courts to interpret 'serious potential risk' in light of the [statute's] enumerated crimes ['burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another']."  *Id.* at 2558 (citing 18 U.S.C. § 924(e)(2)(B)(ii).  It was the combination of uncertainties that led the *Johnson* Court to hold that the residual clause of the ACCA is unconstitutional.

This case is in a different procedural posture than *Johnson*, where the sentencing court was evaluating the application of the ACCA's residual clause to a prior conviction.  In this case, a jury will be asked to consider the statutory elements not in the context of an undefined "ordinary case," but with respect to "real-world facts" as the jury itself determines them.  Section 924(c)(3)'s residual clause passes constitutional muster as a criminal charge because it does not delineate a series of enumerated offense that create "uncertainty about how much risk it takes for a crime to qualify as" a "crime of violence," and the jury will be asked to apply the statute's qualitative "substantial risk" standard to real-world conduct.  *Id.* at 2558, 2561.

-11-

The court therefore finds that Hobbs Act robbery does not categorically fail to qualify as a crime of violence within 18 U.S.C. § 924(c)(3)(A), nor is the residual clause of § 924(c)(3)(B) unconstitutionally vague.

III.  Conclusion

For the reasons stated in this opinion and order, the court finds that defendant's motion to dismiss the indictment is DENIED and defendant's motion to dismiss count two of the indictment is DENIED.

Dated:  May 5, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 5, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

-12-